This bill has been brought for an account of the profits . , , . , . , . , , . of a copartnership winch was carried on under various forms for many years. It conian-ncedin July, 1787» and tbe complainant contends that it continued until 1801 ; the defendants insist that it ceased in December, 1798. Tbe question then is, (and it is the only one in the case) how long did the copartnership continue ? It appears from the original articles that ikeprdod fixed for its duration was seven years, but after the expiration of that period, the defendants being desirous of renewing the connexion, transmitted to the complainant in London (where he resi(lsd).the articles of copartnership, with an indorsement of a renewal of them for another term o? seven years, to commence from the expiration of the former one. The complainant in liis answer to the letter of the defendants, which inclosed this renewal of the 7 ^ articles, says, that he. will agree to it, if he is relieved from his difficulties on the arrival of the ship Carolina, The Carolina did arrive, and with such remittances 'as seem to have satisfied the complainant 5 ior it appears I10 continued to discharge his former duties as a c.o-partner, by purchasing and shipping goods to the defendants without any charges for commissions., rud they cou-tinued to carry on their trade here, and to make h;:n ve • mittancqs under their original firm. But (here is no evidence that the complainant ever sent, any formal renewal of the articles to the defendants, and it was therefore, contended by them that the copartnership which continued was not for seven years, but was determinable at any time at the will of either of the parties. This ground cannot be supported. I consider the complainant’s resumption of his duties as a partner on the original terms, as a substantial renewal of the articles on his part, and such an assent to the written renewal qi' them by tlip de- *502 as would be binding on Mm if tbe defendant». were Ilow insisting on it. None of their letters or acts contradict this construction. It is true that in Dec’ber* 17"98’ indorse on tbe articles a declaration, that the copartnership is then dissolved; but this very act is a proof yiat they considered the copartnership. as before existing under the articles, or why thus endeavor to cancel them ? Besides, it was an ex-parte act, and there is no evidence that the complainant ever had any notice of it; indeed the defendants seem sensible that it could have no effect, for we And them afterwards in May, 1799, giving credit in the books of their firm, here, to Sampson Dickson & Co. their English house, for a shipment of' goods then received,
Dut although there is this full evidence of the renewal of the copartnership on the original terms, yet I think on another ground it ought to bo considered as dissolved "before the term expired ; and this is, that both parties evidently contemplated sucha dissolution. We see in their letters a mutual dissatisfaction prevailing, and a mutual wish expressed to bring their concerns to adose. The defendants in their letter of the 18th of July, 1799, complain that the last shipment of goods was made without any orders, and the complainant sends no more after that time. The defendants discontinue all trade, and engage in the factorage & commission business. These mutual acts of the parties may he fairly construed to amount to a dissolution of the copartnership ; and if the complainant had not concurred in it, yet as it is not pretended that he sustained any injury from the defendants, withdrawing themselves, & as the new business in which they engaged required no stock, and was carried on exclusively by their personal exertions, I should consider the copartnership as virtually dissolved on this, ground, j. for it would be unconscionable, that the complainant chould share in the profits of a business to which he contributed neither money, goods, nor labor. But since the dcü'udants have expressly recognised the existence of the copartnership in May, 1799, by the entry in their *503 books before mentioned, and this could not be the mo-went ofits determination (fosr some time insist be allowed for disposing of this last shipment from the complainant) •it is most reasonable to say that it continued until the . , „ . . end of that year. This view of its duration is further authorised by the letter of Mr. Bold to the complainant,and dated in July, 1799, in which he says “ let us have all our accounts current, that we may prepare for a close, with the close of tills year.” I feel bound then by these facts to declare that the copartnership was confirmed between the parties until the end of December, 1799, ex-cept as to the business done by the defendants in the fac-torage and commission line during that year.
It is therefore ordered and decreed that the master do take an account of the clear profits of the said copart-nership, and report the amount thereof, if any, which the complainant will be entitled to receive, and that the parties' do produce to the master all their hooks of account and other papers relating thereto. And as the, said copartnership has been of long continuance, and consists of complicated concerns, which will require more time for a complete investigation than the master can spare from his other duties, it is recommended to the parties to appoint one or more accountants to assist him in making the said investigation; and if the parties shall refuse or omit to do so, it is ordered that the master do employ at their joint expense, some experienced accountant as an assistant to him in this duty. The costs arc reserved until the master shall make his report.
Thomas Waties,